**MINNESOTA MUT. LIFE INS. CO. v. NEWMAN.**

No. 14303.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 28, 1941.

Rehearing Denied Jan. 9, 1942.

Norman, Stone & Norman, of Rusk, and Vinson, Elkins, Weems & Francis and Fred R. Switzer, all of Houston, for appellant.

John W. Laird, of Lufkin, for appellee.

SPEER, Justice.

Plaintiff Mrs. Wood Newman instituted this suit against defendant The Minnesota Mutual Life Insurance Company on a group life insurance policy in favor of Southern Pine Lumber Company, by the terms of which it was alleged that the life of plaintiff's husband was insured to the extent of $1,000. Parties will be referred to as they were in the trial court and Southern Pine Lumber Company will be called employer.

The policy contract was issued in 1933 and was effective when plaintiff's husband, Wood Newman, died in January, 1937.

Plaintiff pleaded the policy as a basis for her suit, and alleged that the policy or a true copy of it was in possession of defendant, and gave notice to produce, under penalty of plaintiff's right to introduce secondary evidence of its contents.

Defendant filed a general denial and answered specially that the insurance contract did not cover the life of plaintiff's husband, because of certain provisions in the policy.

Plaintiff introduced in evidence a photostatic copy of the policy issued by defendant to the employer.

The contract provides that, "This policy, together with the Employer's application therefor, a copy of which is attached hereto, shall constitute the entire contract between the parties hereto."

The application made by the employer was for a policy of group insurance on the lives of its employees, specifying the amount of insurance to cover officers, superintendents, foremen, and ordinary white employees.

The application contained these further provisions:

"Insurance is desired on all employees who make application therefor and who have been in our employ for ———— or more, except part time employees and unskilled ordinary negro employees on whom no insurance is desired.

"We desire that all new employees and all present employees not eligible for insurance under the foregoing provisions shall be allowed to make application for insurance when they severally become eligible under the foregoing provisions and we agree to advise The Minnesota Mutual Life Insurance Company of all employees who make application."

In the face of the policy, among other things, it is provided:

"In addition to the employees originally insured hereunder, shall be added from time to time all new employees whenever said employees become eligible for insurance in accordance with the plan of insurance hereinbefore stated and agree to make the required premium contributions, and the additional premium required shall be paid by the employer to the company, but no employee shall be insured except upon evidence of insurability satisfactory to the company, unless application for such insurance is made within ninety days of such employee's eligibility for such insurance.

"The employer shall furnish the company with the names of all employees as they become eligible and apply for insurance hereunder, together with the information as to each necessary to determine the age, the amount of insurance, the beneficiary, and the date such insurance is to become effective, in accordance with the plan of insurance hereinbefore referred to."

There is a further provision in the policy that defendant will furnish to the employee

whose life is insured, a certificate showing the amount of insurance protection allowed and to whom it is payable.

There is no substantial difference between the parties as to the existing facts material to this controversy. The conflict seems to be as to the effect of the facts proved.

It was established by competent testimony, without contradiction, that the deceased Wood Newman began work for the employer in June, 1936, and worked at bunching logs since that time to January 7th, 1937, when he signed the regular card, by the provisions of which he applied for insurance in an amount of $1,000, in accordance with the terms of the group insurance policy, and authorized the employer to deduct his proportionate part of the premium from his wages each succeeding month. This card was delivered to the employer, who was authorized to receive such applications, and the employer gave him a receipt for the premium to be deducted from his next pay check. The card application was sent by the employer to Mrs. Ralls' agency at Houston, Texas, as was the custom of the employer in all preceding transactions of a similar nature. Newman was a new employee, as distinguished from those previously covered by the policy. Newman's application card was sent to the home office of defendant at St. Paul, Minnesota. We have seen that the contract provided in effect that when new employees became eligible for insurance, signed an application card, authorizing the deduction of premiums from their wages and delivered it to the employer, the latter would fill in a blank furnished by defendant for that purpose, giving certain information to the defendant, from which it could determine if a certificate should be issued to the applicant without evidence of insurability.

E. S. Marshall, the manager of employer, testified that it was his custom to send in this additional request on the defendant's blank form, but he did not know whether it was done in this instance or not. There was such a blank received by the home office on January 18th, 1937, along with the application, but it was one made out and signed "Southern Pine Lumber Co., Employer, by E. S. Marshall", in typewriting. Mr. Marshall said he did not sign that one. This request for additional employees' insurance is the one which brought about the delay by defendant in accepting deceased's application for coverage. In the typewritten request received by defendant it is disclosed that deceased was a teamster and began work for the employer on "6th month 1936". It will be observed that the contract provided in effect that if an employee has been eligible for insurance under the group policy for a period of ninety days before making application, he must make satisfactory proof of his insurability before the defendant would accept such application. The nature of the proof of insurability required is indicated by a blank form shown in the record. In that form, ten questions and several subdivisions of questions were required to be answered. When defendant received the card application of deceased for coverage, it also received the typewritten request for "additional employees' insurance" signed on typewriter, as above indicated. Defendant promptly returned to its agent, Mrs. Ralls, at Houston, both the application card and the request for "additional employees' insurance", stating that the request was not dated, witnessed or signed by the employer, and further that it disclosed Newman had been employed more than ninety days and that proof of insurability would be required on the form furnished for that purpose, and further inquiring if Mr. Newman was white or colored, this requirement being one of the conditions of the policy. Mrs. Ralls' agency advised the employer of the requirements of the defendant, but had no response. Newman's application was made on January 7th, 1937, and he was taken sick on the 9th following and died of pneumonia on January 22nd, 1937. He was never advised of the requirements of defendant above referred to. The foregoing is a summary of the undisputed facts as disclosed by the testimony in this case.

Trial was to a jury. Special Issues one to five inquired about matters above detailed by us, about which there were no controversies. Special Issue No. 6 was: "Do you find from a preponderance of the evidence that Wood Newman applied to the Minnesota Mutual Life Insurance Company for insurance within ninety (90) days after he became eligible for insurance, if he became eligible, under the terms of the said group Life Insurance Policy?" The answer was, "Yes". Another special issue inquired whether or not defendant required proof of insurability and was conditioned upon an answer to No. 6, in the negative, and was not answered.

At the conclusion of the evidence, defendant moved for an instructed verdict, the motion was overruled. It objected to the submission of any and all of the issues upon the grounds they were uncontroverted, and to Special Issue No. 6, because it submitted a question of law, and because it was at least a mixed question of law and fact, and for the further reason the contract being one in writing it was the duty of the court and not the jury to pass upon the question of when, under the contract, deceased became eligible, and that the date of his application was undisputed. After the verdict was returned defendant moved for judgment non obstante veredicto. This motion was likewise overruled. Judgment was entered for plaintiff for $1,000, with twelve per cent penalty and $250 attorney's fees, as prayed for. Hence defendant's appeal.

We have concluded that the court should have sustained the motion for an instructed verdict.

■ We are concerned here with a construction of a group insurance contract made between defendant and the employer for the benefit of employees. Plaintiff, the beneficiary of any insurance carried by the deceased, can recover, if at all, only under the provisions of the group policy contract, and the burden of proof was upon her to establish that right. Brown v. Equitable Life Assurance Soc., Mo.App., 143 S.W.2d. 343; Ætna Life Insurance Co. v. Gullett, 253 Ky. 544, 69 S.W.2d 1068. Plaintiff must rely solely upon the policy contract made between defendant and the employer, and her right of recovery is dependent upon a performance of the terms of that contract. Western Union Tel. Co. v. Douglass, 104 Tex. 66, 133 S.W. 877.

■ There were no allegations made by plaintiff that the terms of the policy contract were ambiguous or in any way uncertain in meaning. It follows that the contract as a whole must be read together and each part thereof construed in connection with all other provisions therein contained.

By the terms of the application made for insurance, which became a part of the contract, insurance was to cover all employees who made application therefor (as provided in other parts of the contract), except part time employees and unskilled ordinary negro employees. This clearly means such white employees as were then working full time and met other requirements provided for in the contract. Further provisions were made for other employees who should later become eligible for insurance. This, of course, means all white persons who work for the employer on full time under employment made after the date of the contract; it could also apply to persons working part time at the date of the contract, and became permanently employed for full time thereafter. Both of such classes would become eligible for insurance at the time of employment on full time basis. They could acquire coverage under the group policy by making application therefor and authorizing the employer to deduct the premium from their wages if the application was made within ninety days from the time they were so employed, and request is made by the employer for additional insurance on their applications, as provided in the contract. But we find in the contract the further provision that if an employee does not make the application within ninety days from the time he becomes eligible, he must furnish evidence of insurability in addition to his application. In addition to all this, as a condition precedent, the employer was required to file with defendant a request for insurance on additional employees. This means in addition to those previously requested by the employer. In such request it was required that it show that those for which additional insurance is desired come within the terms of the policy; that is, that they were full time white employees, and when they began work as such, to enable the defendant to know when they became eligible. The employer's manager says he does not know whether he did this or not in connection with deceased's application. Mrs. Ralls' agency at Houston, handling all matters between the employer and defendant, did forward to defendant a form requesting additional insurance on deceased. As above shown, this form was filled out and signed in typewriting. Where the agency got the information contained therein is not shown. The form disclosed that deceased had been eligible for insurance for six months prior to the date of his application. The application card and form for additional insurance were returned to the agency by defendant, with the request that the employer make the application over its signature, furnish information as to whether applicant was white or colored, and to furnish evidence of insurability, since the typewritten request for additional insurance disclosed that deceased had been an employee more than ninety days when he

made application. This it had a right to do under the terms of the contract. Neither the Ralls agency nor defendant had any knowledge that the applicant had taken ill two days after making the application, nor that he died a few days later. The last letter from defendant to the agency, urging that the application be completed, bears date of January 28th, 1937, five days after the death of Newman.

Plaintiff insists that the application of her husband, signed on January 7th, 1937, was all sufficient to entitle him to insurance, irrespective of any further acts of either the employer or defendant, because at about the time of issuing the group policy by defendant, Mrs. Ralls, owner of the Ralls Agency handling the contract between the parties, stated in a public meeting before the employees of that date, that all an employee had to do to procure insurance protection under the policy was to sign the application card. It may be conceded that her statement was true as relating to those present in the meeting, for they may have all been eligible for insurance at that time. But it does not follow that the same rule would apply to new employees who became eligible at a later date. There were special provisions made in the contract to cover additional employees. In any event the oral statement made by Mrs. Ralls could not change the terms and conditions of the written policy, which contained the whole contract.

A policy of insurance is merely a contract and because it relates to insurance gives it no more sanctity and no more mystery than any other contract entered into between parties. A construction of such contracts will be controlled by such well-settled rules as that if its terms are ambiguous it will be construed most strongly against the insurer, but if plain and unambiguous, it will be construed to mean that the parties must perform its provisions. Ætna Life Ins. Co. v. Padgett, 49 Ga.App. 66, 176 S.E. 702; Commercial Standard Ins. Co. v. McKissack, Tex.Civ.App., 153 S.W.2d 997, writ of error refused. The mere application for insurance, such as that made by deceased in this case, is not a contract of insurance. But absent allegations by plaintiff that the contract consisted in part oral and part in writing, or allegations of authority by Mrs. Ralls to bind the defendant by oral representations, or allegations of ratification by defendant of her oral representations, or estoppel, evidence of her oral statements varying the terms of the written contract were improvidently admitted in evidence by the trial court and would form no basis for a judgment in her favor. Great Southern Life Ins. Co. v. Dolan, Tex.Com.App., 262 S.W. 475.

Where, as in this case, a written contract is relied upon for recovery, without allegations of ambiguity the obligations of the respective parties are to be ascertained from the intentions of the parties gathered from a consideration of the entire instrument. No phrase, sentence or section should be isolated and considered independent of other language used in the contract. 10 Tex.Jur., sec. 164, page 282.

It is the settled rule in this State that in such cases as this, a construction of the meaning of language used in a contract, as to when an employee became eligible for insurance under the provisions of the instrument, the question is one for determination by the court and not by a jury. Texas Construction Co. v. Dearing, Tex. Civ.App., 296 S.W. 1112, affirmed as to this point by Commission of Appeals in 1 S.W. 2d 265.

In view of what we have said, we conclude that the trial court should have construed the terms of the policy of insurance and in doing so was impelled to find that Wood Newman was not covered by its terms and should have sustained defendant's motion for an instructed verdict, and having overruled the same should have granted the motion for judgment non obstante veredicto. It therefore becomes our duty to render such judgment as the trial court should have entered. The judgment of the trial court will be reversed and here rendered for defendant. It is accordingly so ordered.