**REPUBLIC NATIONAL LIFE INSURANCE COMPANY, Petitioner,**

v.

**Sudie SPILLARS et al., Respondents.**

**No. A–9457.**

Supreme Court of Texas.

May 22, 1963.

Rehearing Denied June 20, 1963.

Thomas G. Nash, Jr., Dallas, for petitioner.

Mac L. Bennett, Jr., Normangee, Fulbright, Crooker, Freeman, Bates & Jaworski, M. W. Parse, Jr., with above firm, Houston, for respondents.

SMITH, Justice.

This is a suit on a group credit life insurance contract issued by Republic National Life Insurance Company to the Farmers State Bank of Madisonville, Texas. The original action was brought by the Bank against the estate of J. D. Spillars, Sr., to recover on a promissory note. By stipulation the Bank relinquished its claim against Republic National in favor of the estate of J. D. Spillars.

Sudie Spillars, as temporary administrator of the estate of J. D. Spillars, Sr., filed this third-party claim against Republic National seeking to recover the sum of $5,000.00, together with penalty and attorney fees, upon the theory that the life of J. D. Spillars, Sr., was insured at the time of his death under a policy of group credit life insurance. Sudie Spillars et al. recovered on their cross action in a nonjury trial and in the Court of Civil Appeals. 363 S.W.2d 373. The judgments of the courts below are reversed, and judgment is here rendered for Republic National Life Insurance Company.

The facts leading up to the filing of this suit are as follows: In 1957 or 1958 J. D. Spillars, Sr., became indebted to the Farmers State Bank; this debt was still in existence on July 1, 1960, when the group creditor life insurance contract between the Farmers State Bank and the Republic National became effective.

On December 23, 1960, Spillars executed a note to the Bank in renewal of the prior existing debt in the amount of $8,052.92. No additional funds were advanced or loaned to J. D. Spillars, Sr. On that same date Spillars delivered to the President of the creditor bank a check in the amount of the premium for his coverage under the group policy. Spillars did not then have sufficient funds on deposit to pay the check, and the President temporarily held it in his desk. Later Spillars told the Bank President he realized he was overdrawn, but that he would take care of the check. The President testified that "he came back in here and told me that he was fixing to sell the calves and to go ahead and write the insurance; and I wrote the insurance on January 14th, at his request." A certificate of insurance bearing the date of January 14, 1961, was issued to Spillars by the President of Farmers State Bank as the agent of Republic National. On January 17, 1961, three days after the issuance of the certificate of insurance, J. D. Spillars, Sr., died.

The controversy centers around the proper interpretation to be given the contractual provisions of the master policy issued to the Bank which relate to creditor coverage. The relevant provisions of the policy are as follows:

"Coverage: *All debtors of the [Bank] * * *, whose respective names and amounts of indebtedness as of the effective date of this policy are submitted by the [Bank] to the Company * * *, shall be initially insured * * * on the effective date of this policy. * * * While this policy is in force, all new debtors * * * may likewise be insured hereinunder from the date they become new debtors* of the [Bank]." (Emphasis added.)

It is undisputed in the record that: (1) on the effective date of the master contract, July 1, 1960, J. D. Spillars was a debtor of the Bank, and his name was not included as one of the debtors to be initially insured; (2) the note executed by J. D. Spillars on December 23, 1960, in favor of the Bank was given to renew a pre-existing indebtedness; (3) on the date of the execution of the renewal note the certificate of insurance was not issued, but that the same was issued on January 14, 1961; and (4) the language of the master policy is unambiguous.

Sudie Spillars et al. contend that the phrase, "from the date" controls and that a reasonable interpretation of that phrase in the above quoted contract provision is that any debtor may obtain the benefits of coverage at any time from and after the execution of the note evidencing the indebtedness and prior to the maturity date of such note while the debtor is not delinquent.

Republic National takes issue with this contention and takes the position that to give such phrase the interpretation placed on it by Sudie Spillars would permit the Bank to rescue itself from bad loans and dying debtors, thus destroying basic underwriting standards. It is Republic National's

position that since J. D. Spillars was not initially insured Sudie Spillars must establish that he was a new debtor on the date his creditor's life policy was written in order to recover. Republic National contends that the status of a "new debtor" cannot be established for the reason that on the effective date of the master policy J. D. Spillars was a debtor of the Bank, and the renewal note did not create a new debt on the date of the renewal note. Therefore, since J. D. Spillars was not initially insured and since he was not a new debtor on the date of the execution of the renewal note, he was ineligible for coverage and Sudie Spillars et al. cannot recover under this policy. We agree with Republic National.

■ As a general rule contracts of insurance are to be strictly construed in favor of the insured, but this does not affect the further general rule that contracts of insurance are to be construed as other contracts, and that all parts of the contract are to be taken together, and such meaning shall be given to them as will carry out and effectuate to the fullest extent the intention of the parties. See: United American Insurance Company v. Selby, 161 Tex. 162, 338 S.W.2d 160, 84 A.L.R.2d 367. It is the duty of the Court to construe the meaning of the language used in a contract. Minnesota Mut. Life Ins. Co. v. Newman, Tex. Civ.App. (1941), 157 S.W.2d 667, wr. ref. want of merit.

■■ Where, as here, an unambiguous writing is being construed, this Court will give effect to the intention of the parties as expressed or apparent in the writing. In the usual case the instrument alone will be deemed to express the intention of the parties, for it is objective and not subjective intent that controls. Ohio Oil Co. v. Smith, Tex., 365 S.W.2d 621. Thus, where the language of an insurance contract is plain, it must be enforced as made.

The master policy imposes two conditions precedent, either one of which must be met before insurance coverage can exist. The conditions are: (1) J. D. Spillars must have been initially insured as a debtor on the effective date of the policy; or (2) at the time of the execution of the note on December 23, 1960, he must have incurred a new debt and procured insurance coverage. Since J. D. Spillars was not initially insured, the creation of a new debt in order to support a status of a new debtor is the foundation upon which the eligibility of Spillars for insurance must stand or fall.

It cannot be said that Spillars was a new debtor on December 23, 1960, for the note he executed on that date was a renewal of a pre-existing indebtedness to the Bank. Thus, Sudie Spillars' recovery cannot be upheld, for J. D. Spillars was not within the coverage of this policy. He was not a new debtor when he executed the renewal note.

The judgments of the courts below are reversed, and judgment is here rendered that Sudie Spillars et al. take nothing by their cross action.