Bessie FRUHMAN, Appellant,

v.

NAWCAS BENEVOLENT AUXILIARY, Appellee.

No. 17223.

Court of Civil Appeals of Texas.

Dallas.

Jan. 17, 1969.

Rehearing Denied Feb. 14, 1969.

Elihu E. Berwald, of Rosenfield, Berwald & Mittenthal, Dallas, for appellant.

Gerald R. Coplin and Gene W. Francis, of Passman, Jones, Stewart & Andrews, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

This is an appeal from a take nothing summary judgment in an action to recover the proceeds of an insurance policy. Sam Fruhman died at Dallas, Texas on September 4, 1966. In the year 1949 Fruhman became a member of Nawcas Benevolent Auxiliary, which is a voluntary, nonprofit, unincorporated association and fraternal benefit society as defined in Art. 10.01 et seq., of the Insurance Code of the State of Texas, V.A.T.S., Fruhman remained an active member of the association until his death which occurred when he was seventy-six years of age. The certificate of membership in effect at the time of his death, being No. 0010010 dated January 17, 1964, and which was a replacement of two prior certificates of membership, was

specifically subject to the constitution and by-laws of the association. Fruhman's wife, Bessie, was the named beneficiary in the certificate issued to Sam Fruhman. Following Fruhman's death, Bessie Fruhman, his widow, sued Nawcas Benevolent Auxiliary seeking to recover a $5,000 death benefit, with penalty and attorney's fee, alleged to be due her as the designated beneficiary in the certificate of membership issued to Sam Fruhman. Mrs. Fruhman filed her motion for partial summary judgment seeking to recover the death benefit of $5,000, together with the statutory 12 per cent penalty, and requesting that her claim for reasonable attorney's fees be severed and tried separately. The court overruled this motion. Nawcas filed its motion for summary judgment, supported by affidavits, and the trial court sustained its motion and rendered judgment denying Mrs. Fruhman any recovery. From this judgment she appeals. We affirm.

We agree with both appellant and appellee that there is no genuine issue of any material or disputed fact and that this record presents only a question of law as to whether the appellant is entitled to the death benefit, with penalty and attorney's fee, or whether she is entitled to nothing. The correct resolution of the question depends upon the construction and interpretation of the contract of insurance between appellee Nawcas and appellant's deceased husband.

Article IX of the constitution and by-laws, and being an integral part of the certificate of insurance, sets forth the benefits accruing to a member and his designated beneficiary. Section 1 of Article IX is as follows:

"SECTION 1.—Benefits shall be of three (3) types:

A. Death Benefits—payable to the member's designated beneficiary as provided by Article IX, Section 2 et seq and Article XIII, Section 1 hereof.

B. Monthly Retirement Benefits—payable to the member beginning one month after attainment of the retirement age and continuing until death, provided that in the event that accumulated monthly benefits paid to the members do not exceed the stipulated death benefit to which the member's beneficiary would have been entitled, the difference between the accumulated monthly payments and death benefit shall be paid to the member's beneficiary.

C. Terminal Benefit—payable to the member's designated beneficiary in the event that the total of the accumulated monthly benefits paid to the member exceeds the stipulated death benefit. The terminal benefit shall be $500.00."

Section 2 of Article IX sets forth schedules of death and retirement benefits from which it appears that the death benefit applicable to Sam Fruhman was $5,000 and that he was entitled to retirement benefits of $50 per month commencing one month after his attainment of retirement age (70) and continuing until his death. Section 2 further provides that: "Upon the death of a member in good standing who is eligible for death benefit, said member's beneficiary shall receive the maximum death benefit allowable in such instances, * * *."

Article XVI, entitled "Definitions", provides:

"1. BENEFITS:—Any monies paid by this Association to members or their beneficiaries, including death payments or monthly payments, shall be considered a 'benefit' as that term is used herein."

It is undisputed in this record that when Sam Fruhman reached the age of seventy he requested and received, in accordance with his certificate of membership and the constitution and by-laws of the appellee Nawcas, retirement benefits at the rate of $50 per month and continued to draw such amount until his death. The total amount thus received by Fruhman was the sum of $2,450. Following Fruhman's death appellant made demand upon appellee for all death benefits owing to her as designated beneficiary, contending that she was entitled to receive the full sum tof $5,000 pursuant to the provisions of subparagraph A of Section 1 of Article IX of the constitution and by-laws, above quoted. Appellee refused such demand and took the position that the above quoted portion of the constitution and by-laws, and especially subparagraph B of Section 1 of Article IX, accorded to the beneficiary the death benefit of $5,000, less the amount of $2,450 which had been paid to Sam Fruhman in retirement benefits during his lifetime. Appellee tendered to appellant its check for the difference between $2,450 and $5,000, or the sum of $2,550, which it contended was the proper amount owed to the beneficiary by virtue of the express terms and conditions set forth in the insurance agreement. The parties entered into an agreement in writing that appellant might accept the $2,550, without prejudice to her rights to assert her claim for the additional sum of $5,000. It is without dispute, therefore, that appellant has received and retained the sum of $2,550 as beneficiary of her deceased husband.

Appellant takes the position that she is entitled to receive the $2,550 so paid to her by virtue of subparagraph B of Section 1, Article IX, above quoted, and that her receipt of that difference does not in any way affect her being entitled to the death benefit of $5,000 provided for in subparagraph A of Section 1 of Article IX and that she would therefore be entitled to the total sum of $7,550. She also contends that she made written demand upon appellee for payment more than sixty days prior to the institution of the suit, thus maturing the 12 per cent penalty and reasonable attorney's fee provided for in Article 10.13 of the Insurance Code, Vernon's Ann.Civ.St., if the claim for $5,000 death benefit is valid.

Appellee, as opposed to this contention, argues that when the contract of insurance is viewed within its four corners the entire plan of insurance demonstrates an intent that the total amount of retirement benefits paid to a member during his lifetime should be deducted from the $5,000 death benefit and that the beneficiary receive the excess, if any. In the event that the retirement benefit so received by the member exceeds the $5,000 death benefit, that particular benefit becomes exhausted, in which event the "terminal benefit" provided for in subparagraph C of Section 1, Article IX, becomes effective and the total amount due the beneficiary is the sum of $500. We think the position taken by appellee is correct.

We do not consider this insurance contract to be ambiguous or its meaning obscure. We hold, as a matter of law, that the insurance agreement is plain and unambiguous so that the intent of the contracting parties is expressly found in the language used in the agreement. In construing the contract under consideration we are governed by well established rules of law. An insurance policy is nothing more than a contract between the insurer and the insured wherein each party becomes bound to perform the obligations recited in the policy. The parties to such insurance contract may agree as they see fit, provided no provision of law or public policy is thereby contravened. 32 Tex.Jur.2d, Insurance, §§ 1 and 5. Since insurance policies are contracts, they are governed by the rules of interpretation that are applicable to contracts generally and this notwithstanding the rule that contracts of insurance are to be strictly construed in favor of the insured. 32 Tex.Jur.2d, Insurance, § 54, pp. 102–103; United American Ins. Co. v. Selby, 161 Tex. 162, 338 S.W.2d 160, 84 A.L.R.2d 367 (1960); Pan American Life Ins. Co. v. Andrews, 161 Tex. 391, 340 S.W.2d 787, 93 A.L.R.2d 560 (1960); Westchester Fire Ins. Co. v. Rhoades, 405 S.W.2d 812 (Tex.Civ.App., Austin 1966, writ ref'd n. r. e.). Courts

may only construe a contract of insurance as it was made; they are not authorized to make a new contract for the parties. Republic Nat. Life Ins. Co. v. Spillars, 368 S.W.2d 92, 5 A.L.R.3d 957 (Tex.Sup. 1963); Royal Indemnity Co. v. Marshall, 388 S.W.2d 176 (Tex.Sup.1965); American-Amicable Life Ins. Co. v. Lawson, 419 S.W.2d 823 (Tex.Sup.1967); American Casualty Co. of Reading, Pa. v. Myrick, 304 F.2d 179 (5th Cir. 1962). Courts are without authority to needlessly reject any words or terms used in contracts of insurance by parties or delete any clause therein as surplusage, unless that action is judicially mandatory. Williams v. J. & C. Royalty Co., 254 S.W.2d 178 (Tex.Civ.App., San Antonio 1952, writ ref'd); Fort Worth Lloyds Ins. Co. v. Willham, 406 S.W.2d 76 (Tex.Civ.App., Amarillo 1966, writ ref'd n. r. e.). If words used in an insurance policy are plain and unambiguous, it is the court's duty to give effect to that language in accordance with its plain, ordinary meaning, and not create a new contract by arbitrary judicial construction. Vaughn v. Atlantic Ins. Co., 397 S.W.2d 874 (Tex.Civ. App., Tyler 1966, writ ref'd n. r. e.). All parts of the insurance contract are to be taken and considered together, and such meaning shall be given to them as will carry out and effectuate to the fullest extent the true intention of the parties. The fact that a policy is a poor one for the insured cannot alter or affect its provisions. 32 Tex.Jur.2d, Insurance, § 55, pp. 108–109; Republic Nat. Life Ins. Co. v. Spillars, 368 S.W.2d 92, 5 A.L.R.3d 957 (Tex.Sup.1963); Employers Mut. Cas. Co. of Des Moines, Iowa v. Nelson, 361 S.W.2d 704 (Tex.Sup.1962); American-Amicable Life Ins. Co. v. Lawson, 419 S.W.2d 823 (Tex.Sup.1967); Smith v. Rio Grande Nat. Life Ins. Co., 227 S.W.2d 579 (Tex.Civ. App., Fort Worth 1950, writ ref'd). In construing the contract the policy should be viewed as a whole, and not isolated portions thereof, and giving the effect of each part where that can be done with reasonable certainty. An implication cannot be allowed to override an express pro-

vision of the contract. National Security Life & Cas. Co. v. Davis, 152 Tex. 316, 257 S.W.2d 943, 38 A.L.R.2d 764 (1953). The terms of the policy constitute the measure of the insurer's liability. Westchester Fire Ins. Co. v. Rhoades, 405 S.W.2d 812 (Tex.Civ.App., Austin 1966, writ ref'd n. r. e.).

When we view this contract of insurance within all of its four corners in the light of these principles of law we think the intention of the parties is clearly demonstrated and leaves no doubt that appellee has fully complied with its obligation to discharge its liability reflected in the agreement. While the benefits referred to in Section 1 of Article IX are divided into three parts, as set forth in subparagraphs A, B and C, yet they are, by their very terms, so inter-related and joined together that it would not be a reasonable interpretation of the language to construe each separate subparagraph as a complete entity. The three subparagraphs, when viewed together, merely detail to whom benefits are payable and the amount of such benefits. In subparagraph A the death benefits are made payable to the member's designated beneficiary. In subparagraph B the monthly retirement benefits are payable to the member himself each month in the amount designated, with the express provision that, in the event that the accumulated monthly benefits paid to the member do not exceed the stipulated death benefit to which the member's beneficiary *would have been entitled,* then the difference between the accumulated monthly payments and the death benefit shall be paid to the member's beneficiary. Subparagraph C, entitled "Terminal Benefit", takes care of the contingency in which the member has already received an amount of monthly retirement benefits in excess of the stipulated death benefit, then the designated beneficiary shall be entitled to the sum of $500.

It seems quite apparent to us that by these express provisions the insurance company said to its insured, Sam Fruhman:

"Mr. Fruhman, we will pay your named beneficiary, Bessie Fruhman, the sum of $5,000 when you die, but in the event you have elected, at the age of seventy, to be paid and receive monthly retirement benefits, pursuant to schedule, then we will pay you these monthly benefits until you die at which time if the amount so paid to you does not exceed the $5,000 death benefit to which Mrs. Fruhman 'would have been entitled', then we will pay her the difference between such accumulated monthly payments and the sum of $5,000. In the event that you should elect to receive and be paid the monthly retirement benefits and at the time of your death such payments having been made to you exceed the sum of $5,000, being the death benefit, then we will pay Mrs. Fruhman the sum of $500."

We think it important to place emphasis upon that part of subparagraph B of Section 1 which specifically spells out the method of ascertaining the amount due to the named beneficiary under the contingencies herein existent and especially the specific language of such subparagraph which refers to the "stipulated death benefit to which the member's beneficiary *would have been entitled * * *.*" (Emphasis supplied.) When we give meaning to these plain and ordinary words we cannot bring ourselves to agree with appellant's contention that there is an implication which should control. We think it also important to take cognizance of the words "benefit" and "maximum benefits" as used in other parts of the agreement.

To adopt the contention advanced by appellant would, in our opinion, have us disregard the plain and express provisions of Section 1 B, and completely ignore the provisions of Section 1 C of Article IX. The effect of this would be to ask us to create a new contract between the parties predicated upon the implication asserted by appellant that the named benefits are totally independent, one from the other. This, we cannot do for the reasons above

stated. The limits of liability of the appellee company are clearly delineated in the quoted provisions of the policy and the constitution and by-laws made a part thereof. If appellant's contention were to be sustained it would mean that she would receive not only the $5,000 death benefit claimed by her but also the additional sum of $2,550 already paid her under the provisions of subparagraph B. We see nothing in the contract to justify this contention.

From what we have said we conclude that the trial court was correct in rendering summary judgment in favor of appellee, thereby denying appellant any recovery. We therefore overrule appellant's points of error and sustain appellee's counterpoints.

The judgment of the trial court is affirmed.

BATEMAN, Justice (dissenting).

I respectfully dissent. To my mind, it seems fairly clear that the parties intended that upon the death of the member the death benefit should become payable, undiminished by the retirement benefits which had been paid to the member prior to his death, and that the references in subparagraph B, of Section 1, Article IX, to the death benefit provided in subparagraph A merely lay down a measure by which to determine the total amount of retirement benefits payable to the member and the designated beneficiary.

This view seems reasonable to me in the light of the fact that, although subparagraph A makes specific reference to two other portions of the contract (one to Section 2 of Article IX and the other to Section 1 of Article XIII), it makes no reference to subparagraph B and nothing is said to indicate that the unequivocal promise to pay a certain death benefit shall be subject to any reduction because of subparagraph B.

If the view that the obligation to pay the death benefit is not subject to such erosion be mistaken, then in any event it seems to me that the intent that the death benefit shall be so diminished is not so certain as to make it wholly unreasonable to say that there was no such intent. If that be true, it must then be said that there is to that extent a want of clarity amounting to ambiguity, making applicable the rules stated in Continental Cas. Co. v. Warren, 152 Tex. 164, 254 S.W.2d 762, 763, 767 (1953), that a fact issue has been raised as to what was intended, and that if the intent of the policy to exclude a certain liability is not so certain as to make it wholly unreasonable to say that such liability was included, the court should hold that liability of the insurer has been established.

It seems to me also that Providence Washington Ins. Co. v. Proffitt, 150 Tex. 207, 239 S.W.2d 379, 381 (1951), supports my view that if appellee had intended the language used in subparagraph B to be used also to restrict its liability under subparagraph A, such intent could and should have been evidenced by appropriate phrases contained in subparagraph A. After reciting the rule that "exceptions and words of limitation will be strictly construed against the insurer," the court said: "We will certainly not write a limitation of liability into a policy where none exists."

I do not think we should do so in this case either. I think the judgment should be reversed and rendered, except for the matter of the attorney's fee, which should be remanded for determination by the trial court.