

# The Attorney General of Texas

March 9, 1983

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Gibson D. Lewis
Chairman
Committee on Intergovernmental
 Affairs
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. JM-5

Re:   Benefits   for   treatment
of alcohol and drug dependency
under article 3.51-9 of the
Insurance Code

Dear Representative Lewis:

You have asked several questions regarding the construction of the Availability of Alcohol and Other Drug Dependency Coverage Act, article 3.51-9 of the Insurance Code. Section 2 of this act provides:

> Insurers, nonprofit hospital and medical service plan corporations subject to Chapter 20 of this code, and health maintenance organizations transacting health insurance or providing other health coverage in this state shall offer and make available, under group policies, contracts, and plans providing hospital and medical coverage on an expense incurred, service or prepaid basis, benefits for the necessary care and treatment of alcohol and other drug dependency that are not less favorable than for physical illness generally, subject to the same durational limits, dollar limits, deductibles, and coinsurance factors. Such offer of benefits shall be subject to the right of the group policy or contract holder to reject the coverage or to select any alternative level of benefits if such right is offered by or negotiated with such insurer, service plan corporation, or health maintenance organization.

> Any benefits so provided shall be determined as if necessary care and treatment in an alcohol or other drug dependency treatment center were care and treatment in a hospital. For purposes of this Act, the term 'alcohol or other drug dependency treatment center' means a facility which provides

a program for the treatment of alcohol or other drug dependency pursuant to a written treatment plan approved and monitored by a physician and which facility is also (1) affiliated with a hospital under a contractual agreement with an established system for patient referral, or (2) accredited as such a facility by the Joint Commission on Accreditation of Hospitals, or (3) licensed as an alcohol treatment program by the Texas Commission on Alcoholism, or (4) certified as a drug dependency treatment program by the Texas Department of Community Affairs in accordance with such standards, if any, as may be adopted pursuant to Subsection (c) of Section 5.12 of the Texas Controlled Substances Act (Article 4476-15, Vernon's Texas Civil Statutes), by the Executive Director of the Texas Department of Community Affairs, or (5) licensed, certified, or approved as an alcohol or other drug dependency treatment program or center by any other state agency having legal authority to so license, certify, or approve.

The act is remedial and therefore should be liberally construed. See Burch v. City of San Antonio, 518 S.W.2d 540, 544 (Tex. 1975); Board of Insurance Commissioners v. Great Southern Life Insurance Company, 239 S.W.2d 803, 809 (Tex. 1951).

You first ask:

Can an insurer deny payment of benefits for the necessary care and treatment of alcohol and other drug dependency to a provider meeting the definition of an 'alcohol or other drug dependency treatment center' in article 3.51-9, Insurance Code, on the basis that the provider is not also included in the definition of a 'hospital.'

We first note that benefits are provided to the insured, i.e., the individual covered by the group insurance policy, not to the facility or doctor providing the treatment. Thus, the question should be whether an insurer may deny benefits when the provider is an alcohol or other drug dependency treatment center, but not a hospital. We answer in the negative. The act states that

[a]ny benefits so provided shall be determined as if necessary care and treatment in an alcohol or other drug dependency treatment center were

> care and treatment in a hospital.    (Emphasis added).

Ins. Code art. 3.51-9, §2.   It is clear from the underscored language that the legislature did not intend that "alcohol or other drug dependency treatment center," as that item is defined in section 2 of the act, should be synonomous with "hospital."   The fact that the act uses the word "shall" also shows that insurers are not free to discriminate against authorized treatment centers.   See Schepps v. Presbyterian Hospital, 638 S.W.2d 156, 157 (Tex. Civ. App. - Dallas 1982, writ ref'd n.r.e.).

Your second question is:

> Are benefits for the necessary care and treatment of alcohol and other drug dependency payable under article 3.51-9 to all providers who fit the definition of an 'alcohol or other drug dependency treatment center' or only to those who contract with the insurer providing such coverage?

For the reasons stated above, question two should be whether benefits are payable if the insured goes to any alcohol or drug dependency treatment center, or only to one that contracts with the insurer to provide such coverage.   The act does not specifically address this issue, but states only that benefits shall be not less favorable than for physical illness generally.   Therefore, if the insurer is able to limit benefits for physical illness on the basis of the particular providers, it would be equally able to limit benefits under the act.

Unless statute or public policy prohibits it, the parties to an insurance contract may agree to any provisions they wish.   Hatch v. Turner, 193 S.W.2d 668, 669-70 (Tex. 1946); Boon v. Premier Insurance Company, 519 S.W.2d 703, 704 (Tex. Civ. App. - Texarkana 1975, no writ); Fruhman v. Nawcas Benevolent Auxiliary, 436 S.W.2d 912, 915 (Tex. Civ. App. - Dallas 1969, writ ref'd n.r.e.).   Thus, unless other statutes or the policy of the act prohibits it, an insurer may limit provision of benefits under the act to certain providers.

The act governs three different types of insurers:   (1) group health insurers subject to chapter 3 of the Insurance Code, (2) nonprofit hospital and medical service plan corporations subject to chapter 20 of the Insurance Code, and (3) health maintenance organizations subject to chapter 20A of the Insurance Code.

Chapter 3 insurers are prohibited from restricting coverage to certain providers by article 3.51-6, section 3 of the Insurance Code, which states, in pertinent part:

> The policy may provide that all or a portion of any indemnities provided by any such policy on account of hospital, nursing, medical, or surgical services may, at the option of the insurer and unless the insured requests otherwise in writing not later than the time of filing proofs of such loss, be paid directly to the hospital or person rendering such services; but <u>the policy may not require that the service be rendered by a particular hospital or person.</u>  Payment so made shall discharge the obligation of the insurer with respect to the amount of insurance so paid. (Emphasis added).

Therefore, a chapter 3 insurer must provide benefits if the insured goes to any alcohol or drug dependency treatment center.

Nonprofit corporations for group hospital service governed by chapter 20 of the Insurance Code are given statutory authority to contract with specific providers.  Such corporations have the purpose of operating nonprofit hospital service plans whereby care is provided through an established hospital or hospitals, and sanitariums with which it has contracted for such care.  Ins. Code art. 20.01.

Article 20.11 further describes the right to contract. It states:

> Such corporations shall have authority to contract with health care providers, other than physicians, in such manner as to assure to each person holding a policy or certificate of said corporation the furnishing of such services and supplies as may be agreed upon in the policy, with the right to said corporation to limit in the policy the types of disease for which it shall furnish benefits; provided that such corporations shall not be required to contract with any particular health care provider; and provided further that this Article shall not be deemed to authorize such corporation to contract with any health care provider in any manner which is prohibited by any licensing law of this state under which the health care provider operates. Health care provider means any person, association, partnership, corporation, or other entity furnishing or providing any services or supplies for the purpose of preventing, alleviating, curing, or healing human illness or injury.

Thus, the corporation is free to contract with specific health care providers so long as the policyholder is assured services and supplies as may be agreed upon in the policy. Since article 20.11 authorizes the corporation to limit the types of disease for which it shall furnish benefits, a corporation that offers only limited or specified disease policies would not have to offer alcohol dependency coverage. The act exempts such policies from its coverage. Ins. Code art. 3.51-9, §3. Of course, chapter 20 corporations must treat alcohol or drug treatment facilities like hospitals under their policies.

Article 20.12 prohibits a corporation from contracting to furnish to the member a physician or any medical services, from attempting to control the relations existing between a member and his or her physician, and from restricting the right of the patient to obtain the services of any licensed doctor of medicine. Article 20.12, however, does not give the insured the right to insist on a physician for the treatment of alcohol or drug dependency who is not acceptable to the provider, e.g., hospital or alcohol treatment center, that has contracted with the corporation. See Group Hospital Service v. Armstrong, 240 S.W.2d 418, 423 (Tex. Civ. App. - Amarillo 1951, writ ref'd n.r.e.). The interpretation is in harmony with the act because the corporation must still make available benefits under the act and because the insured likewise does not have full choice of physician for physical illness generally.

A health maintenance organization [hereinafter "HMO"] governed by chapter 20A of the Insurance Code is authorized to furnish medical care services through physicians, providers, or groups of providers who contract with the HMO. Ins. Code art. 20A.06(a)(3). Therefore, HMO's, like chapter 20 corporations, are free to specify certain providers or physicians, as long as benefits for alcohol or drug dependency are made available and alcohol or drug dependency treatment centers are treated the same as hospitals.

Your third question is:

> Does a group health insurance policy or contract subject to article 3.51-9 provide coverage as a matter of law for the necessary care and treatment of alcohol and other drug dependency not less favorable than for physical illness generally unless such coverage is expressly rejected (or an alternate level of benefits expressly selected) by the group or contract holder?

We answer in the affirmative. The act dictates that group insurers "shall offer and make available, under group policies, . . . benefits

for the necessary care and treatment of alcohol and other drug dependency that are not less favorable than for physical illness generally." (Emphasis added). Ins. Code art. 3.51-9, §2. This offer, however, is subject to a right of rejection or selection of alternative benefits. Id.

Statutes bearing on insurance contracts become part of the contract as though they had been copied therein. Allstate Insurance Company v. Hunt, 469 S.W.2d 151, 155 (Tex. 1971); Harkins v. Indiana Lumbermens Mutual Insurance Company, 234 S.W.2d 430, 431 (Tex. Civ. App. - Galveston 1950, no writ). Therefore, even if a group policy is silent, the insurer nevertheless "offers and makes available" benefits for alcohol and other drug dependency that are not less favorable than for physical illness generally, because the statute obligates it to do so.

If the offer is read into a silent policy, is an acceptance or rejection by the policyholder implied? For three reasons we believe acceptance of full benefits is implied. First, the act says that the insurer "shall offer and make available" the benefits. (Emphasis added). Ins. Code art. 3.51-9 §2. Second, although, because the statute is remedial in nature, it should be liberally construed to achieve its purpose, see Board of Insurance Commissioners v. Great Southern Life Insurance Company, supra, at 803, strict construction of the rejection provisions would best effectuate that purpose. See Employers Casualty Company v. Sloan, 565 S.W.2d 580, 583 (Tex. Civ. App. - Austin 1978, writ ref'd n.r.e.); Guarantee Insurance Company of Texas v. Boggs, 527 S.W.2d 265, 268 (Tex. Civ. App. - Amarillo 1975, writ dism'd). Third, the act makes the right to reject or select alternative level of benefits possible only if the right is offered or negotiated by the insurer. Ins. Code art. 3.51-9, §2. If alternative benefits have not been explicitly offered, they cannot be chosen. Therefore, when the offer is implied as a matter of law, acceptance is also implied.

Your fourth question is:

> Can an insurer assign an alternate level of benefits to a covered group without the express rejection by the group of full benefits?

We answer in the negative. The act requires the insurer to offer full benefits. That offer is subject to the right of the policyholder to reject coverage or to select alternative benefits. If the insurer were free to assign the alternative level, the language regarding the right of the policyholder to reject full coverage and requiring the offer of benefits would be rendered meaningless. Statutes will not be construed so as to render parts of them meaningless. Brown v.

Memorial Villages Water Authority, 361 S.W.2d 453, 455 (Tex. Civ. App. - Houston [14th Dist.] 1962, writ ref'd n.r.e.).

Questions five and six are:

What evidence is required of such a rejection or alternate selection of benefits?

Must there be written evidence of such a rejection or alternate selection of benefits?

The act does not specify the means of rejection, nor has the State Board of Insurance issued an administrative rule requiring written rejection. Therefore, if there exists a requirement that such rejection must be written that requirement must arise by implication. Interpretation by implication, however, is permissible only to supply obvious intent not expressly stated, not to add to a statute. Commonwealth of Massachusetts v. United North and South Development Company, 168 S.W.2d 226, 229 (Tex. 1942).

Additional grounds exist for declining to imply legislative intent that rejection be written. The legislature is presumed to have known existing statutes and to have known the construction placed upon similar statutes by the appellate courts. Garner v. Lumberton Independent School District, 430 S.W.2d 418, 423 (Tex. Civ. App. - Austin 1968, no writ). Other insurance statutes deal with rejection of coverage. The Personal Injury Protection Coverage Act, article 5.06-3 of the Insurance Code, provides that all automobile liability insurance policies shall include personal injury protection coverage unless rejected by the insured in writing. The Uninsured or Underinsured Motorist Coverage Act, article 5.06-1 of the Insurance Code, provides that all automobile liability insurance policies shall include uninsured motorist coverage unless the insured rejects such coverage in writing. Article 5.06-1 was amended in 1981 to add the writing requirement, despite an appellate court holding that written rejection was required by rule of the Insurance Board. See Employers Casualty Company v. Sloan, supra. Because the same legislature passed article 3.51-9, the intent to allow oral rejection in article 3.51-9 must be assumed.

Your seventh question is:

Does the 'necessary care and treatment of alcohol dependency' as that term is used in article 3.51-9 encompass detoxification only, or the entire treatment provided under the treatment plan envisioned in paragraph 2 of section 2 as approved and monitored by a physician?

The act does not define "necessary care and treatment of alcohol dependency." As you point out, however, part of the definition of "alcohol or other drug dependency treatment center" is "a facility which provides a program for the treatment of alcohol or other drug dependency pursuant to a written treatment plan approved and monitored by a physician." Ins. Code art. 3.51-9 §2. An act should be interpreted in a manner which gives effect to the entire act. Brown v. Memorial Villages Water Authority, supra, at 455. Thus, the "necessary care and treatment of alcohol and other drug dependency" should be construed as meaning treatment according to the written plan.

Nevertheless, the act does not further describe the written treatment plan. The act does state that benefits should be not less favorable than for physical illness generally, but that language is not helpful since drug dependency is fundamentally different from illnesses which are not based on addiction. Because the language of the act leaves the act's intent obscure with respect to treatment, extrinsic aids to construction, such as the purpose of the act, public policy, and legislative history, may be examined. Harris v. City of Fort Worth, 180 S.W.2d 131, 133 (Tex. 1944). The act was sponsored and prepared by the National Association of Insurance Commissioners (C-1) Task Force on Alcoholism, Drug Addiction, and Insurance. A report prepared by the Task Force dated May 26, 1981 is a valuable aid to interpretation of the act. The legislature is assumed to have adopted the legislation with the same intent evidenced by the commission in its report unless the language of the statute unambiguously indicates the contrary. 2A Sutherland Statutory Construction §48.11 (4th ed. 1973 & Supp. 1982).

The report includes Model State Legislation, which the act follows almost verbatim, and a Model Benefit Structure. Both the Model State Legislation and the Model Benefit Structure were adopted by the Task Force. The benefits include a maximum of two year-long benefit periods per lifetime. Each benefit period includes outpatient care as well as inpatient care. Counseling and therapy are included. The report does not contain any statement of intent, but the Model Benefit Structure indicates that something more than mere detoxification was required.

The only records of legislative discussion before passage of the act support the interpretation that more than detoxification is required. Although the Senate Committee on Economic Development did not issue an official report, tapes of the committee hearing when the bill was approved are available. Committee members' questions regarding duration of treatment were answered by reference to the Model Benefit Structure. Official tape recording, August 3, 1981 meeting of the Texas Senate Economic Development Committee. See

Sutherland, supra, §48.10 (resort to statements at committee hearings in construing statutes).

In keeping with the liberal construction of the act and its legislative history, benefits should go beyond detoxification. Detoxification is but a preliminary step in the care and treatment of alcohol or other drug dependency. Thus, we do not believe the legislature could have intended to limit the benefits to detoxification. The extent of the benefits would depend on the particular policy, including whether alternative level of benefits were chosen, and considering the durational limits, dollar limits, deductibles, and coinsurance factors applicable to physical illness generally. See Ins. Code art. 3.51-9, §2.

Your eighth question is:

> Can an insurer require that each new member of a covered group be medically underwritten prior to coverage as a condition on the ability of the group to select full benefit coverage?

The act is silent as to underwriting requirements. Since the benefits can not be less favorable than for physical illness generally, the insurer's underwriting method for alcohol or other drug dependency coverage must be as liberal as for physical illness generally. See Ins. Code art. 3.51-9, §2. Although conditioning full coverage on individual underwriting may appear coercive on the part of the insurer, it does not violate the act so long as full coverage for other physical illnesses is conditioned on individual underwriting.

The act should be construed to be constitutional. State v. City of Austin, 331 S.W.2d 737 (Tex. 1960). If underwriting restrictions were implied, insurers could argue that the act violates due process or impairs the obligation of contracts. See Insurers' Action Council, Inc. v. Markman, 490 F.Supp. 921 (D. Minn. 1980), aff'd 653 F.2d 344 (8th Cir. 1981), in which the court upheld a Minnesota insurance law mandating the offer of basic medical coverage because the law allowed the insurer to apply its own underwriting standards in order to charge a premium commensurate with the risk.

### S U M M A R Y

> An insurer may not deny benefits under the Availability of Alcohol and Other Drug Dependency Coverage Act, art. 3.51-9, when the provider is an alcohol or other drug dependency center, but is not a hospital. All insurers subject to the act must make available benefits under the act and must treat alcohol or other drug dependency

treatment centers like hospitals.  A group health insurer governed by chapter 3 of the Insurance Code must provide benefits if the insured goes to any alcohol or drug dependency treatment center. Nonprofit corporations governed by chapter 20 of the Insurance Code may both limit their benefits to their contracted providers and may refuse to provide benefits under the act at all in specific disease policies.  Health maintenance organizations may restrict benefits to their contracted providers.  As a matter of law, if a policy governed by the act is silent, it automatically provides full benefits.  An insurer may not assign an alternate level of benefits without express rejection of full benefits. Rejection need not be in writing.  "Necessary care and treatment of alcohol dependency" means an entire treatment plan as set out in the act and requires more than detoxification.  An insurer may require each new member to be medically underwritten prior to coverage as a condition to the group selecting full benefits, so long as this is its underwriting policy for physical illness generally.

Very truly your

JIM  MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Deborah J. Herzberg
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Deborah J. Herzberg
Jim Moellinger