WESTERN ALLIANCE INSURANCE COMPANY, Appellant,

v.

Asiano ALBAREZ et al., Appellees.

No. 11205.

Court of Civil Appeals of Texas.

Austin.

June 17, 1964.

Rehearing Denied July 8, 1964.

Gay & Meyers, Austin, for appellant.

A. T. Mullins, Kuykendall & Kuykendall, Austin, for appellees.

HUGHES, Justice.

Western Alliance Insurance Company, appellant, having issued a public liability automobile insurance policy to Silas Collins and, after proper notice, having failed to defend an action brought by Asiano, Seferino and Gregorio Albarez and Angelo Hinojosa, appellees, against Silas Collins and his brother Miles Collins for damages resulting from a collision of the insured vehicle, while being operated by Miles Collins with the permission of Silas Collins, with a vehicle owned by Asiano Albarez and in which all appellees were then riding, was sued by appellees to recover the amount of judgment awarded them against Silas and Miles Collins in such original action.

Appellant's refusal to defend the Collins' suit and its denial of liability for the judgment therein rendered is based upon the following endorsement of exclusion attached to the policy:

## "119.  EXCLUSION OF NAMED DRIVER

This endorsement forms a part of Policy No. ___109902___ issued to ___Silas Collins___ by the ___Western Alliance Insurance Company___ at its Agency located
(Name of Insurance Company)
(city and state) ___Austin, Texas___ and is effective from ___December 28, 1960___
(12:01 A.M. Standard Time)

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement forms a part of the policy to which attached, effective from its date of issue unless otherwise stated herein.

It is agreed that the insurance afforded by this policy shall not apply with respect to any claim arising from accidents which occur while any automobile is being operated by ___Miles Collins (Brother)___

Acknowledged by ___/s/ Silas T. Collins___

By ___ANDERSON  MCBRIDE  WORMLEY___
(Duly Authorized Representative)

Form 119.—EXCLUSION OF NAMED DRIVER

Texas Standard Automobile Endorsement
Revised October 20, 1941."

The Trial Court, in his conclusions of law, found that the above endorsement was invalid because it violated Sections 21, 21 (a), 21(b) and 21(f) of Art. 6701h, Vernon's Ann.Tex.Civ.St., and Art. 5.06 of the Texas Insurance Code, V.A.T.S. The Court also legally concluded that the endorsement violated the public policy of Texas.

Art. 6701h is known as the "Texas Motor Vehicle Safety-Responsibility Act." It is a very comprehensive act which was enacted in 1951.

Appellees point to language used by the Legislature in the emergency clauses to the original Act [1] and to a 1963 amending Act [2] which in general language state the purpose of the law to be for the protection of the public against financially irresponsible owners and drivers of motor vehicles and to encourage safer use of motor vehicles on our streets and highways.

■ We appreciate and approve the laudable objectives of this legislation but in determining its legal effect we are confined to the specific means prescribed by the Legislature for achieving its goal. No general statement of public policy can override or add to the plain provisions of the Act.

The specific provisions of the Act which are claimed to be violated by the endorsement excluding liability for acts of Miles Collins are these:

"Sec. 21. (a) A 'motor vehicle liability policy' as said term is used in this Act shall mean an owner's or an operator's policy of liability insurance, certified as provided in Section 19 or Section 20 as proof of financial responsibility, and issued, except as otherwise provided in Section 20, by an insurance company duly authorized to write motor vehicle liability insurance in this State, to or for the benefit of the person named therein as insured.

"(b) Such owner's policy of liability insurance:

"1. Shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted; and

"2. Shall pay on behalf of the insured named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, all sums which the insured shall become legally obligated to

pay as damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles * * *.

"(f) Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

"1. The liability of the insurance company with respect to the insurance required by this Act shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be canceled or annulled as to such liability by any agreement between the insurance company and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy; * * *.

"4. The policy, the written application therefor, if any, and any rider or endorsement which does not conflict with the provisions of the Act shall constitute the entire contract between the parties."

The policy in suit obligated appellant:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by any person;

"B. injury or destruction of property, including loss of use thereof, hereinafter called 'property damage';

arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the

---

1. Acts 1951, 52nd Leg., p. 1210.

2. Acts 1963, 58th Leg., p. 1320.

company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient."

The policy then names those who are insureds as follows:

"PERSONS INSURED

"The following are insureds under Part 1:

"(a) With respect to the owned automobile,

"(1) the named insured and any resident of the same household,

"(2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured;"

Appellees also direct attention to Art. III of the Act entitled, "Security following accident," particularly Sec. 5(c) which provides, in part "This Section shall not apply * * * 1. To such operator or owner if such owner had in effect at the time of such accident a motor vehicle liability policy with respect to the motor vehicle involved in such accident."

Sec. 5 prescribes the procedure to be taken by the Department of Public Safety in accident cases when the owner or operator of the motor vehicle involved fails to deposit security as determined by the Department. As shown by Sec. 5(c) supra, this entire Section 5 is inapplicable where, as here, the owner has a motor vehicle liability policy with respect to the motor vehicle involved in the accident.

Appellees say that, "It would be a strained construction indeed to say that the 'motor vehicle liability policy' referred to in said Secs. 5(c) and 2 is not the same motor vehicle liability policy defined and discussed in Sec. 21 of Article IV." Further arguing this point appellees say, "The policy issued before the accident and the one issued subsequent to the accident are both motor vehicle liability policies. Each must contain the minimum requirements of statute. The only requirements are contained in Sec. 21."

Appellees contend that "the only difference between the policy in force before the accident and the policy certified to the Department is that the latter policy provisions are absolute—that is, the company could not raise as a defense late reporting of the accident by the insured, failure to send the company the suit papers, breach of the co-operation clause in the policy, etc. These defenses are available to the insurer under the policy issued prior to the accident."

However much we might be inclined to appellees' point of view that the Motor Vehicle Safety Responsibility Act regulates and controls the provisions of motor vehicle liability insurance policies which are required by the Act as well as those which are not required by the Act, we are precluded by explicit language of the Act as well as authoritative Court decisions to the contrary.

There are numerous events in the Act which result in suspension of a motor vehicle's registration and an operator's license unless proof of financial responsibility is furnished. Sec. 19(a) of the Act provides that this "Proof of financial responsibility may be furnished by filing with the Department the written certificate of any insurance company duly authorized to write motor vehicle liability insurance in this State certifying that there is in effect a motor vehicle liability policy for the benefit of the person *required to furnish proof of financial responsibility*." (Italics added.)

Sec. 21(a) of the Act, quoted supra restricts the phrase "motor vehicle liability

policy" to a policy certified to the Department as provided in Secs. 19 and 20 of the Act.

■■ In our opinion, the reference to a motor vehicle liability policy in Sec. 5(c) of the Act, supra, does not bring within the Act, for purposes of regulation or control, any motor vehicle liability insurance policy except those which are required by the Act as proof of financial responsibility. The primary purpose of the Act is the regulation of owners and operators of motor vehicles for the protection of the public, not the regulation of insurance companies.

The case of United States Casualty Insurance v. Brock, 345 S.W.2d 461, Amarillo Civ.App., writ ref., and the authorities therein cited are conclusive upon the construction of the Act in respect to this question. That Court thoroughly discussed the Act and cited and quoted from the opinion of the San Antonio Court of Civil Appeals in McCarthy v. Insurance Company of Texas, 271 S.W.2d 836, n. w. h., which case also thoroughly analyzed the Act in respect to this question. We quote from the latter case as follows:

" 'The sum of the above analysis is that absolute coverage results when a certificate has been furnished. In this case none was ever furnished by the insurer, nor required by the act in advance of the first accident. The insurer is entitled to plead its policy defenses.' "

■ There is no pleading or proof in this case that Silas Collins, the insured had ever had an automobile accident, that his license had ever been suspended or revoked or that he was required to furnish proof of financial responsibility. Neither is there proof that the policy in suit was "certified" to the Department of Public Safety as provided by the Act.

It is our opinion that the Trial Court erred in holding that the exclusionary endorsement was invalid as being in violation of the public policy of this State and that he also erred in holding such endorsement to be in violation of Art. 6701h.

The contention that the policy endorsement is invalid because in violation of Art. 5.06 of the Insurance Code will now be examined. This Article makes it the duty of the Board to prescribe policy forms, " * * * provided, however, that any insurer may use any form of endorsement appropriate to its plan of operation, provided such endorsement shall be first submitted to and approved by the Board; and any contract or agreement not written into the application and policy shall be void and of no effect and in violation of the provisions of this subchapter * * *."

It was stipulated that endorsement No. 119, copied above, had been duly approved by the Board prior to its attachment to the policy in suit.

■ The endorsement was attached to and became a part of the policy. It, the endorsement, was signed by the insured.

Appellees contend that endorsement 119 was not a part of the policy in suit. The endorsement recites that, "This endorsement forms a part of Policy No. 109902 issued to Silas Collins," and provides that it is effective from December 28, 1960. The number and date of the policy conform to the number and date recited in the endorsement. Under these circumstances, we hold that it conclusively appears that the endorsement was a part of the policy issued to Silas Collins.

There is in the record an instrument signed by Silas Collins as applicant on 12–28–60 which is denominated, "Texas Automobile Insurance Rating Statement," in which Mr. Collins gave information concerning himself and his automobile. Endorsement No. 119 is not in this instrument.

Appellant contends this is not an application; appellees contend to the contrary.

In our opinion, this instrument is not an application for insurance. It does not purport to be. It does contain the word applicant several times and, unquestionably, Mr. Collins is the applicant, but for what? The instrument does not state. It does relate to automobile insurance. It states the number and description of cars owned by applicant and how and by whom they are used. It contains a statement of the number of accidents and traffic convictions involving applicant. It does not state that applicant is applying for anything. It does not state the kind or amount of insurance desired, or its cost. If an insurance company, and, incidentally, no insurance company is named in the instrument, "accepted" this "application," there would be no contract of insurance created. It is much too vague to form a contract upon acceptance.

■ In 44 C.J.S. Insurance § 232, p. 973, it is stated that "An application for insurance consists of two parts, a request for insurance and the furnishing of the information necessary to enable the company to pass on the request." In 32 Tex. Jur.2d, p. 72, it is stated, "Under the law of insurance the application is the request for a contract of insurance. * * *"

■■ It follows that, in our opinion, no application for insurance is shown and, hence, no violation of the statute in this respect is shown. We do not construe Art. 5.06 to require that a formal written application for insurance be made as a prerequisite to the issuance of an insurance policy.

The only remaining ground upon which the judgment below could be affirmed is that Silas T. Collins, the insured, negligently entrusted the use of the insured car to his brother, Miles Collins, knowing that Miles Collins was a reckless and incompetent driver and that this fact creates liability of the insurer under this provision of the policy in suit, "To pay on behalf of the insured all sums, which the insured shall become legally obligated to pay as damages because of :"

Injuries and damages sustained by any person, "Arising out of the ownership, maintenance or use of the owned automobile * * *."

Appellees say that this negligent entrustment arose out of Silas Collins' "ownership" of the car and not from his "use" of car or by the operation of the car by Miles Collins.

■ Under the doctrine of negligent entrustment it is not sufficient to prove the entrustment of a car to a reckless or incompetent driver, this must be followed by evidence that such driver negligently operated the car and that such operation resulted in damage to a third person. Munday v. Pirie-Slaughter Motor Co., 146 Tex. 314, 206 S.W.2d 587. The negligent operation of the car by Miles Collins was a prerequisite to liability of Silas T. Collins for his negligent entrustment of the vehicle to Miles Collins. Endorsement 119 excludes liability of appellant under the policy "with respect to any claim arising from accidents which occur while automobile is being operated by Miles Collins." This claim arose from an accident occurring while Miles Collins was operating the insured car. It is not an insured claim under the endorsement which became a part of the policy.

The judgment of the Trial Court is reversed and judgment is here rendered that appellees take nothing by this suit.

Reversed and rendered.