The **TRAVELERS INDEMNITY COMPANY,** Appellant,

v.

**COLUMBUS STATE BANK,** Appellee.

No. 15460.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

June 12, 1969.

———◆———

Spinn, Ehlert, Spinn, Weisler & Weisler, William J. Ehlert, Brenham, for appellant.

Hodges, Moore & Gates, Morris Hodges, Columbus, for appellee.

COLEMAN, Justice.

This is a suit by a mortgagee of an automobile against an insurance company founded on the "loss payable" clause of an insurance policy. The principal question involved on appeal is the validity of a "rider", signed by both the insured and insurer, but not physically attached to the policy. The trial was to the court without a jury, and a judgment was entered in favor of appellee, the mortgagee. Findings of fact and conclusions of law were filed.

Harvey Albers sold an automobile to L. V. Palmer. He went with Palmer to the bank to see whether the bank would finance the purchase. Palmer was a customer of the bank and had money on time deposit with the bank. They talked to the president of the bank, who told them that he was sure the bank could make the loan when "they had the insurance coverage, fire, theft, and collision, and application for title insurance." Palmer had no driver's license, a fact not known to the bank, and Albers learned that Palmer would not be able to get the insurance unless he had someone else to drive for him. Albers and Palmer went to one of Palmer's friend's house and it was arranged that he would drive for Palmer. Albers then went to Joe Snodgrass & Associates, an insurance agency located in Brenham, who represented the appellant in that area, and made an application for the insurance on behalf of Palmer. He told the agent that Palmer did not have a driver's license and that Hatch had agreed to drive Palmer. He gave the agent Hatch's name, address and driver's license number. Bilski, an employee of the agency, told Albers that he could issue the policy, but that a rider excluding the car from coverage while being driven by Palmer, would have to be included in the policy. Bilski then typed up the policy and the riders. On the "Declarations" page of the policy the coverage was shown. Immediately below the lettered subsection of "Item 4, Coverages," there is printed: "Symbol numbers of endorsements forming a part of this policy on its effective date: 154, 119." The figures "154" and "119" were typed. On the same page there appears "Section 2—This Declarations page, with 'Policy Provisions—Section 1', and any endorsement issued to form a part hereof, completes the above numbered policy."

Item 5 of the "Declarations Page" reads: "Any loss under Part V is payable as in-

terest may appear to the named insured and (name and address) Columbus State Bank, Columbus, Texas."

Item 29 of "Conditions" reads: "Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the President, a Vice President, Secretary or Assistant Secretary of the Company; provided, however, changes may be made in the written portion of the declarations by a manager or general agent of the company when initialed by such manager or general agent."

Endorsement 154 was attached to the policy and signed by the agent. Four copies of Endorsement 119 were prepared by Bilski. He had the policy and the Endorsements signed by the authorized agent of Joe Snodgrass & Associates, but he did not attach the 119 Endorsement. He delivered the policy and the unattached endorsements to Albers and told him to have Palmer sign all four copies of the endorsement and to attach one copy to the original policy, one to the copy, and to mail the others back to him. Two copies duly signed were returned to him in the mail. Albers testified that Palmer signed the 119 Endorsements and then he mailed two of them to the Agency, and he "believed" he gave one to Palmer and did not remember what he did with the other one.

Albers and Palmer took the original policy to the bank and secured the loan. The 119 Endorsement was not attached. Palmer was killed in an automobile accident, which happened while he was driving the car. The 119 Endorsement was not attached to the copy of the policy found in the car. Appellant denied that the loss was covered by the policy, relying on the 119 Endorsement, which reads:

## 119. EXCLUSION OF NAMED DRIVER

"This endorsement forms a part of Policy No. *MP2139574* issued to *Lowery Vasteen Palmer* by the *Travelers Indemnity Company* at its Agency located (city and State) *Brenham, Texas* and is effective from *10–12–66*

"(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

"This endorsement forms a part of the policy to which attached, effective from its date of issue unless otherwise stated herein.

"It is agreed that the insurance afforded by this policy shall not apply with respect to any claim arising from accidents which occur while any automobile is being operated by *Lowery Vasteen Palmer.*

"Acknowledged by:

/s/ Lowery Vasteen Palmer

By /s/ L. E. Dyke
Joe E. Snodgrass & Associates"

The policy provides that any endorsement, "issued to form a part hereof", forms a part of the policy. Albers and Palmer knew that the policy would not be issued without the 119 Endorsement, and Albers, while acting as Palmer's agent in making the application for insurance, requested the issuance of the policy. Palmer signed and returned two copies of the Endorsement to the company. While the trial court found that neither the insurer nor the agency "delivered" the insurance policy to Palmer, in light of its other findings of fact, this finding must be construed to mean that the policy was delivered to Albers, who, in turn, delivered it to Palmer. The policy, including the endorsements, complied with the policy application. The policy did not require that the endorsement be attached to the policy.

The evidence is undisputed that the 119 Endorsement was properly issued with the intention on the part of both the insurer and the insured that it be part of the policy. The endorsement was clearly referred to in the policy and the policy, of which it formed a part, was clearly identified in the endorsement. As between the insurer and the insured the provisions of Endorsement 119 were validly included in the policy even though the endorsement was not physically attached to it. Rice v. Provident Life & Accident Ins. Co., 231 Mo.App. 560, 102 S.W.2d 147; McDaniel v. California-Western States Life Ins. Co., 181 F.2d 606, 17 A.L.R.2d 1036 (5th Cir. 1950); 43 Am.Jur.2d, Insurance, § 283, pp. 345, 346; Appleman on Insurance, Vol. 13, § 7539, p. 297, cf. Marlin Associates v. Trinity Universal Ins. Co., 226 S.W.2d 190 (Tex.Civ. App., Dallas 1949); National Ben Franklin Fire Ins. Co. v. Brown, 253 S.W. 632 (Tex.Civ.App., Austin 1923).

In Fidelity Lloyds of America v. Geddie, 116 Tex. 656, 296 S.W. 500 (1927), the Court said:

"The fact that the policy in controversy contained a clause making the loss, if any, payable to the McFarland Investment Company as its interest might appear does not in any wise alter the fact that the contract proper is between the insurance company and the owner of the property. The effect of such clause is but to name the McFarland Investment Company as the party entitled to receive payment of the fund in the event a loss becomes payable under the terms of the policy. Hamburg-Bremen Fire Ins. Co. v. Ruddell, 37 Tex.Civ.App. 30, 82 S.W. 826. The authorities generally agree upon this matter. That this is ordinarily the rule is not denied by appellant, but it contends for reasons hereafter stated that a different rule should apply in this case. The contract therefore being with the appellee, it is only such loss as may become payable under the terms of the contract that could in any event become payable to the McFarland Investment Company."

Since no loss became payable by the insurer under the terms of the policy, appellee cannot recover on the contract of insurance by virtue of Item 5, the loss payable clause. 32 Tex.Jur.2d, § 277, p. 462.

Appellee pleaded no other basis for recovery against appellant. There is no necessity for applying rules of construction in this case because the material provisions of the policy are unambiguous. There is no basis for a judgment against appellant in the trial court's findings of fact, other than an action based on the contract or in the evidence. Despite the reference to Endorsement 119 found in the policy between the provisions relating to coverage and the loss payable clause, both of which he checked, appellee's president testified that he saw the numbers, but that he did not examine any other part of the policy. He testified: " * * * we expect the agent to cover what we require and we examine the coverage to see that we have the loss payable clause, and unless we are advised of some exceptions, that is as far as we go." He also testified that the bank had no dealings with the agency. "The automobile owner does; he makes the contact and delivers the policy, either himself or the agent delivers it to us." The bank did not purchase the policy. There is no evidence that appellant or the agency knew that the policy as written was not acceptable to the bank. The bank did not know that Palmer was not a licensed driver, and had had no previous experience with the type of policy usually written on cars owned by such drivers.

The policy did not cover damage to the automobile while it was being driven by Palmer. There was no liability on the appellant to pay for such damage. The trial court erred in entering a judgment for appellee. The case was fully developed and the proper judgment was one that appellee take nothing by its suit. The judgment is reversed and judgment is here rendered for appellant.