Oran C. GREENE, Appellant,

v.

**GREAT AMERICAN INSURANCE
COMPANY, Appellee.**

**No. 7643.**

Court of Civil Appeals of Texas,
Beaumont.

Nov. 27, 1974.

Kidd & Doggett, Austin, for appellant.

House, Mercer, House, Brock & Wilson,
Austin, for appellee.

STEPHENSON, Justice.

This is an appeal from an order of the
trial court granting defendant's (Great
American Insurance Company) motion for
summary judgment. The parties will be
referred to here as they were in the trial
court.

Plaintiff (Oran C. Greene) brought this
suit for damages under the uninsured mo-
torist provision of an automobile insurance
policy issued by defendant to his mother,
Letitia Greene. He was injured in a colli-
sion while driving his mother's automobile,
when it was in collision with another auto-
mobile driven by an uninsured motorist.
The affidavit attached to the motion
showed that Form 119 was attached to the
policy in question, reading as follows:

"It is agreed that the insurance af-
forded by this policy shall not apply with
respect to any claim arising from acci-
dents which occur while any automobile

is being operated by Oran Castine Greene.

"Acknowledged by: Letitia Smith Greene (Signature of Named Insured)"

The policy in question, dated December 15, 1971, was issued in renewal of a one year policy containing the same coverage which was as follows: Minimum limits of bodily injury liability, property damage liability, comprehensive coverage, collision, and uninsured motorist.

■ Plaintiff's primary complaint here is that an attempt to exclude him from uninsured motorist coverage by the use of Form 119 is void as contrary to public policy. We disagree. It is argued that such public policy is embodied in Tex.Ins.Code Ann. art. 5.06–1, V.A.T.S., (Supp. 1974–1975) which reads in part as follows:

"No automobile liability insurance . . . covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto, in the limits described in the Texas Motor Vehicle Safety-Responsibility Act, under provisions prescribed by the Board, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. The coverage required under this Article shall not be applicable where any insured named in the policy shall reject the coverage . . . "

The above quoted section of the Insurance Code shows that uninsured motorist coverage is not mandatory in this state. Such coverage is required unless the insured rejects the coverage, and the Board and cases hold that such rejection must be in writing. This court has come to the conclusion that the policy here sued on is not ambiguous, and that Form 119, signed by plaintiff and attached to the policy, effectively rejects such coverage unless partial rejection is contrary to public policy.

■ The plaintiff in this case was offered, and accepted, a contract furnishing her uninsured motorist coverage except when her son was driving the automobile. Why should that be contrary to public policy? If plaintiff's contention is allowed to become the law in Texas, insured motorist with sons or daughters with bad driving records will be unable to secure uninsured motorist coverage in any form except from the assigned pool at a much greater cost. Public policy dictates the allowance of partial rejection of such coverage in order to allow insureds in that situation to secure insurance they can afford, just as they presently can when liability coverage is in question.

Western Alliance Insurance Company v. Albarez, 380 S.W.2d 710 (Tex.Civ.App.—Austin 1964, writ ref'd n. r. e.) is persuasive in the case before us. In this case, Form 119 was attached to the policy excluding insured's brother in the exact form in our case. Suit was filed when the insurance company declined to defend a liability claim arising out of collision which occurred while insured's brother was driving. The trial court held, inter alia, that the exclusion by Form 119 violated the public policy of Texas. The Court of Civil Appeals held specifically that the exclusionary endorsement was not invalid as contrary to public policy. The only difference in the Albarez case and the one before us is that the claim in Albarez was under the liability coverage, and the claim in our case under the uninsured motorist coverage. Our case not being one involving the Motor Vehicle Safety Responsibility Act, we see no valid reason why public policy would allow partial exclusion under liability coverage but not under the uninsured motorist coverage. See also, Travelers Indemnity Co. v. Columbus State Bank, 442 S.W.2d 479 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ).

Plaintiff's argument that public policy in Texas should not allow partial rejection of uninsured motorist coverage is based upon the erroneous deduction that the law of American Liberty Insurance Company v. Ranzau, 481 S.W.2d 793 (Tex.1972), compels that result. This Court makes no attempt to overrule Ranzau, as that case has no application to the factual situation before us. In our discussion of that case, we point out at the outset, there is no mention of *public policy* in Ranzau.

In Ranzau the question arose as to whether an "other insurance" clause in a policy could reduce the amount of uninsured motorist coverage to less than $10,000. The Supreme Court of Texas said, "No." *Not* because of Form 119 excluded some person from coverage, but because "other insurance" contravened the statutory requirement in art. 5.06–1, Tex. Rev.Civ.Stat.Ann., that uninsured motorist coverage should be in the amount of $10,000, and the Board could not approve a form which would serve to reduce that amount of coverage. In Ranzau, an attempt was made in the policy of insurance to violate the statutory requirement as to the amount of coverage. There is no statutory provision stating a policy of insurance with uninsured motorist coverage must insure everyone.

Plaintiff's second and final argument to support its contention that partial rejection of uninsured motorist coverage should be contrary to public policy in Texas is that the courts in the state of California have made a similar holding. Inasmuch as we have no case in Texas passing directly in point, we proceed to examine the California rule in great detail.

One of the most thorough discussions of the public policy of California is to be found in Abbott v. Interinsurance Exchange of Auto. Club. of So. Calif., 260 Cal.App.2d 528, 67 Cal.Rptr. 220 (1968). There the Court of Appeals reiterated California's position that it is primarily concerned with the innocent third party:

"The public policy protecting unknown innocent persons, who may be injured by a car driven by a permittee of the insured, is fundamentally based upon the principle presently set forth in section 16451 of the Vehicle Code." The Court upheld the trial court's interpretation that § 16451 . . . . :

"[California] still requires insurance policies issued in this state to apply to injuries suffered by third parties at the hands of negligent permittee drivers of the insured's car and that while section 11580.1, subdivision (e) of the Insurance Code allows insurers and the insured by contract to restrict coverage *as between themselves,* such permission does not change the law as established by Vehicle Code section 16451 with respect to innocent third parties . . . ." (at 221) (emphasis supplied).

In Abbott the appellant was attempting to validate a policy restriction which excluded coverage of the policy when the assured's car was driven by their son, much like Form 119 in our case. The California Court held such a restriction as void, saying:

" 'The purpose of Vehicle Code section 16451 is to broaden insurance coverage and to protect those injured by the negligence of drivers operating automobiles with the owners' consent. . . . There are no exceptions in the statute to the omnibus coverage thus required. Since the provisions of section 16451 are made a part of every policy of insurance issued by an insurer . . . it must follow that any provision which would exclude such coverage . . . being contrary to the provisions of the statute, and against public policy, must be held invalid and void.' " (cases cited) (at 223)

The forerunner of § 16451 of the Vehicle Code was § 415, and from a discussion of the California cases cited herein, it appears that there was very little, if any, change in the wording of the two sections. In interpreting the meaning of § 415, the Cali-

fornia Supreme Court has stated in numerous opinions that that state's public policy prevents a restriction or whittling away of the uninsured motorists coverage. In Wildman v. Government Employees' Insurance Co., 48 Cal.2d 31, 307 P.2d 359 (1957), the Court said:

"It appears that section 415 must be made a part of every policy of insurance issued by an insurer since the public policy of this state is to make owners of motor vehicles financially responsible to those injured by them in the operation of their vehicles. . . . We are of the opinion that for an insurer to issue a policy of insurance which does not cover an accident which occurs when a person, other than the insured, is driving with the permission and consent of the insured is a violation of the public policy of this state as set forth in sections 402 and 415 of the Vehicle Code." (at 364)

Section 415 of the Vehicle Code provided in part:

"(a) . . . A 'motor vehicle liability policy,' as used in this code means a policy of liability insurance . . . which policy *shall* meet the following requirements:

"(1) * * *

"(2) 'Such policy shall insure the person named therein *and any other person using or responsible for the use of said motor vehicle or motor vehicles with the express or implied permission of said assured.'* (Emphasis added)"

It has also been held that the 1957 amendments, which changed the Vehicle Code and subsequently in 1959 renumbered the sections (§ 415 becoming § 16451) did not change the holding in Wildman—see Interinsurance Exch. of Auto. Club v. Ohio Cas. Ins. Co., 58 Cal.2d 142, 23 Cal.Rptr. 592, 373 P.2d 640 (1962). In Ohio Cas. Ins. Co., supra, the California Supreme Court again stated the rule that: *"Any provision* in a policy which purported to exclude certain classes of permissive users

from coverage was declared to be contrary to this public policy and, therefore, void." (23 Cal.Rptr. at 596, 373 P.2d at 644) (emphasis supplied)

Thus, California would obviously prohibit *any* exclusion or reduction in coverage of the type as envisioned by Form 119. It is also apparent that such public policy is based not merely on judicial pronouncements, but on specific legislative mandates which, because of their mandatory language, leave little or no room for flexible judicial construction. It may also be noted that one of the cases cited by the plaintiff, California Casualty Indemnity Exchange v. Steven, 5 Cal.App.3d 304, 85 Cal.Rptr. 82 (1970), also contains language to support this proposition; at 84 it is said:

"The present case is also governed by the reasoning of the Supreme Court in Mission Ins. Co. v. Brown (1965) 63 Cal.2d 508, 47 Cal.Rptr. 363, 407 P.2d 275, declaring that '* * * the only permissible exclusion is the one expressly provided for in the statute, under which the insurer and the insured may by agreement expressly waive application of the statute. The statute clearly does not contemplate a piecemeal whittling away of liability, either territorially or under certain driving conditions, for injuries caused by uninsured motorists.' "

See also A. Widiss, A Guide to Uninsured Motorist Coverage, § 3.4 (1969).

■ The "whittling away of insurance coverage" which was repeatedly condemned in all of the above California cases has not met with the same reception in Texas. Form 119, which does allow particular policy exclusions, has been approved not only by the State Board of Insurance (on October 20, 1941 as shown by our record) but also by the courts of this state. See Western Alliance Insurance Company of Albarez, supra; Travelers Indemnity Co. v. Columbus State Bank, supra. Although these cases do not involve the issue of uninsured motorists, it is nevertheless true that the terms of the Form

were approved including the words "any claim." The affirmance of Form 119 indicates the Texas policy that some limitations may be applied to insurance coverage, and there has been no Texas case which has stated that such limitation is to apply only to liability provisions of a policy. There appears to be no authority to negate the conclusion that Texas has followed the majority of jurisdictions in enacting uninsured motorists' coverage with the premise that such coverage is to put the motorists injured in a collision with an uninsured vehicle in the same position that they would have been in had the other motorists been properly insured. See 28 A.L.R.3d 551, 556 (1969); for an example of this policy basis, see M. F. A. Mutual Ins. Co. v. Wallace, 245 Ark. 230, 431 S.W.2d 742 (1968); American Liberty Insurance Company v. Ranzau, supra, where the Supreme Court stated that "[t]he Texas statute states its purpose to be 'the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles.'"

It thus appears that California's policy is based on protection of innocent third persons while there is also authority for the proposition that Texas' policy is founded on a premise of protecting insureds against financially irresponsible motorists.

The affidavits and depositions in this case show Letitia Greene wanted to secure insurance coverage for her automobile, but she had a son under twenty-five years of age with a bad driving record. She was informed by the agent that this defendant would not write such insurance unless she signed a form excluding her son from coverage. She was also informed that the insurance could be secured with the son included through another company or through the assigned risk plan at a higher cost. Letitia Greene chose to take this policy excluding her son from coverage. Parties should be allowed to contract in this manner if they want to, and the contract entered into should not be found to be contrary to public policy.

We have examined the remaining points of error, and, finding no merit to them, they are overruled.

Affirmed.

DIES, Chief Justice (concurring).

The paramount consideration here is which view best serves public policy. It is this writer's contention that public policy is far better served under the majority view than the dissent.

For, if the dissent should become the rule, we shall have said to this insurance company and all others, "You cannot legally except a family member (or any other person) from uninsured motorist coverage without also excepting the insured." If we give insurance companies this option only, many insured persons in Texas will end up with no uninsured motorist coverage at all in their policies. No one will argue this is what the Legislature intended.

Of course, one can argue that the insured, as Letitia Greene, could seek insurance from the assigned risk pool. But, how many would? And, if it be one or the other, should it be the mother or the son with the bad driving record?

Only the Legislature and the State Board of Insurance can provide a complete answer to the problems presented by this case. Until then, it is far better for us to make it possible for Letitia Greene, and those like her, to have uninsured motorist coverage on herself than in practice to require complete waiver to obtain a policy of insurance.

KEITH, Justice (dissenting).

I respectfully dissent. The statute, Tex. Ins.Code Ann. art. 5.06–1 (Supp.1974–75) required defendant to include the Uninsured Motorists Coverage in its policy of automobile liability insurance which it issued to plaintiff's mother unless she rejected the coverage. By a valid Board order, which we find in our record, the rejection must be

in writing.[1] Plaintiff's mother did *not* reject the UM coverage. Instead, the policy was written with the coverage; and, more importantly, defendant collected and retained the maximum premium which it was authorized by law to receive for full, unlimited, and unrestricted UM coverage.

The Form 119 which was signed by plaintiff's mother was approved by the State Board of Insurance more than a quarter of a century before Texas adopted the UM statute. Its validity has been upheld as to the liability portion of an automobile insurance policy. See, e. g., Western Alliance Insurance Company v. Albarez, 380 S.W.2d 710 (Tex.Civ.App.—Austin 1964, writ ref'd n. r. e.), and Travelers Indemnity Co. v. Columbus State Bank, 442 S.W.2d 479 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ). Neither case involved the UM coverage in an automobile liability policy.

Under the cited cases, defendant succeeded in making plaintiff an uninsured motorist when he was driving his mother's insured vehicle with her consent. This was the only effect of the rider, Form 119. I do not subscribe to the holding that Form 119, which did not even mention the UM coverage, was a rejection of such coverage.

Defendant, with the full UM premium in its coffers, now says, in effect, that there was a partial, limited, or restricted UM coverage on Mrs. Greene's insured vehicle. In Fidelity & Casualty Company of New York v. Gatlin, 470 S.W.2d 924, 927 (Tex. Civ.App.—Dallas 1971, no writ),[2] the court based its holding upon language apropos to this case:

"Our law was obviously enacted by our Legislature for the benefit of the innocent victim of a financially irresponsible motorist. It should be liberally construed to fully accomplish that purpose. . . . The statute is plain in its direction that each policy of insurance issued must contain uninsured motorist protection in minimum amounts, *without qualification,* and it necessarily follows that any attempt on the part of an insurer to limit the effect of such provision must be held to be in derogation of the statute itself. It would be unconscionable to permit insurers to collect a premium for a coverage which they are required by statute to provide, and then to avoid payment of a loss because of language of limitation devised by themselves." (emphasis supplied)

See also: Bogart v. Twin City Fire Insurance Company, 473 F.2d 619, 625 (5th Cir. 1973);[3] Kemp v. Fidelity & Casualty Co. of New York, 504 S.W.2d 633, 635 (Tex. Civ.App.—Eastland 1973) writ ref'd n. r. e. per curiam, 512 S.W.2d 688 (Tex.1974).

Defendant has misconceived the coverage afforded under the UM portion of the policy of insurance. While Form 119 made Oran Greene an uninsured motorist when he was operating the insured vehicle, it did not take him out of the UM coverage which defendant had assumed when it issued the policy to the named insured. In Elledge v. Warren, 263 So.2d 912, 918 (La.Ct.App.1972, writ ref'd),[4] the court reached the nexus of the coverage question, saying:

"There is no requirement in the statute that the insured have any relation, at the time of the accident, with any vehicle he owns and that is insured with the insurer. *The uninsured motorists protection covers the insured and the family*

---

1. Order No. 9709, Minutes, State Board of Insurance, August 9, 1967.

2. *Gatlin* was cited with approval in American Liberty Insurance Company v. Ranzau, 481 S.W.2d 793, 796 (Tex.1972).

3. Our Supreme Court has expressly approved the holding in *Bogart.* See Westchester Fire Insurance Company v. Tucker, 512 S.W.2d 679, 684 (Tex.1974).

4. *Elledge* was cited with approval by our Supreme Court in Westchester Fire Insurance Company v. Tucker, supra fn. 3 (512 S.W.2d at 685).

*members while riding in uninsured vehicles, while riding in commercial vehicles, while pedestrians or while rocking on the front porch.* [emphasis supplied]

* * * * * *

"The only relation that the insured must have to automobiles at the time of the accident is that he be injured by an automobile driven by an uninsured motorist.

* * * * * *

"The purpose of the statute is to protect completely, those willing to accept its protection, from all harm, whatever their status—passenger, driver, pedestrian—at the time of injury, produced by uninsured motorists. The only restrictions are that the plaintiff must be an insured, the defendant motorist uninsured, and that plaintiff be legally entitled to recover."

Other states have faced the same question now presented by our record. See A. Widiss, A Guide to Uninsured Motorist Coverage § 2.13, at 34–35 (1969).

The *only* case remotely in point mentioned in the majority opinion is that of California Casualty Indemnity Exchange v. Steven, 5 Cal.App.3d 304, 85 Cal.Rptr. 82 (1970), where the defendant's contention raised here was rejected with emphasis. The California statute required the UM coverage unless the named insured deleted the provision in writing—just as does our Board rule in Texas. The California policy contained a rider, similar to the Form 119 in our case, which excluded any coverage while the insured vehicle was being operated by the named insured's son. There, as here, the insurer pleaded the exclusion in bar to a recovery by the son under the UM coverage, but the contention was overruled.

The court there rejected the insurer's argument, which is also urged upon us in slightly different language, "that 'the language used in an insurance contract must be given its plain and ordinary meaning, and when it is unambiguous it must be given effect.'" (85 Cal.Rptr. at 83) [5] The court continued, in language which I adopt as applicable to the case at bar, noting only that the requirement for rejection in writing is by Board rule instead of statute:

"The Legislature has declared it to be the public policy of this state that no automobile liability insurance policy shall fail to include uninsured motorist coverage unless the insurer and the named insured 'by agreement in writing, delete the provision covering damage caused by an uninsured motor vehicle.' . . . Because the provision of such coverage is a matter of public policy, a claim of waiver thereof is not to be determined simply by reference to the rules which courts otherwise apply to determine the intent of contracting parties. Deletion of the coverage required by the statute can be effected only by an express 'agreement in writing, delet[ing] the provision covering damage caused by an uninsured motor vehicle.' . . . A general exclusion of coverage for all drivers under age 25 has been held not to be an effective waiver of uninsured motorist coverage . . . . [bracketing in text]

* * * * * *

"Waiving 'application of the statute' must, of course, delete *all* uninsured motorist coverage. Here the endorsement did not purport to delete all uninsured motorist coverage, even as to David [the minor son]. He would, under its terms, still be covered if injured by an uninsured motorist while a passenger or a pedestrian. Such 'piecemeal whittling

---

5. The California cases cited are in accord with the general rule applicable in Texas. See, e. g., Republic National Life Insurance Co. v. Spillars, 368 S.W.2d 92, 94, 5 A.L.R. 3d 957 (Tex.1963). See also, 32 Tex.Jur.2d, Insurance § 54, at 102, et seq. (1962).

away of liability' is void as against public policy." (citations omitted, emphasis in text, bracketed material inserted) [6]

The California case quoted from so copiously is consistent with the Texas approach to the UM coverage; and, in my opinion, is consistent with the public policy enunciated by the Legislature. So holding, I would sustain plaintiff's first four points.

I see yet another reason why the majority has fallen into error in its holding in this case. Under our statutory law the UM coverage is made standard and uniform throughout the state, both as to the persons covered and the amounts recoverable for such persons's injury or death in an automobile accident caused by an uninsured motorist. Tex.Ins.Code Ann. art. 5.-06 (1963). The Board, exercising the authority conferred upon it by statute, has approved a standard policy provision with UM coverage.

This standard coverage is not subject to variance, exclusion, or reduction by the individual insurers. Once it is determined (as has the majority in this case) that a reduction less than total rejection of the statutory coverage can be "negotiated" by the insurer and the insured, the UM protection is subject to being whittled away in an inconsistent manner.

Moreover, if we allow, as has been done in this case, a deviation of the full coverage for the persons statutorily intended to be covered, by premium negotiation between the insurer and the insured, we go a long way in destroying the statutory objective. Under the statute, Tex.Ins.Code Ann. art. 5.03, insurers are forbidden to vie with one another for automobile liability insurance business by "negotiating" a reduction of such coverage with insureds by excluding certain occupants or operators of the insured's automobile. In this instance, the majority says that defendant did not issue a policy of insurance which afforded full UM coverage to its named insured, and furnished her something less than the statutory coverage. If this be true, and the conclusion of the majority is inescapable, the defendant charged and collected a premium in excess of that authorized by law for the coverage it did extend. Art. 5.03.

If the courts are to sanction exclusion of one of the persons entitled to the coverage under the statute and standard policy, we could permit just as effectively a reduction of the potential liability of the insurer if a monetary reduction of the 10/20000 limits of the coverage had been "negotiated" originally between the parties. Neither is permitted under the statute.

Additionally, I have serious doubts that the insured actually intended to exclude her son from the uninsured motorist coverage while driving her automobile, but included him when he was a passenger therein. Undoubtedly, the insured was willing to, and did agree with the defendant not to provide liability insurance for the general public for injuries inflicted by her son while driving her automobile. Form 119 did precisely that. It seems inconceivable to me that the insurer did not choose more apt words for her to use in "rejecting" complete UM coverage. While I claim no expertise in the drafting of insurance contracts, it would appear that, at the very least, a passing mention would be made of the UM coverage in such a "rejection." While more apt words can probably be found to express such an intention even more clearly, a minimum "rejection" would include the language I

---

6. Florida, with a similar statute, seems to have reached the same result as did the California court in *Steven,* supra. See, e. g., First National Insurance Co. of America v. Devine, 211 So.2d 587 (Fla.App.1968);

Butts v. State Farm Mutual Automobile Ins. Co., 207 So.2d 73 (Fla.App.1968). But, cf. Southeast Title and Insurance Co. v. Thompson, 231 So.2d 201 (Fla.Sup.1970).

have appended in the following footnote.[7] In short, I reject the majority's holding that Form 119 served the dual purpose of making plaintiff an uninsured motorist while driving the car—*and*—deprived him of UM coverage. I concede the first but deny the second.

I am unpersuaded by the authorities cited by the majority in support of the holding that plaintiff was not covered by the UM portion of the policy in issue. Three of the four California cases cited by the majority did not even involve the UM coverage.[8] Only California Casualty Indemnity Exchange v. Steven, supra, from which I have quoted so liberally earlier, involves the UM coverage. Furthermore, as I have already noted, the two Texas cases (*Albarez* and *Columbus State Bank*) involved *only* public liability coverage, not UM coverage.

Finally, I confess that I am at a loss to explain the majority's reliance upon M. F. A. Mutual Ins. Co. v. Wallace, 245 Ark. 230, 431 S.W.2d 742 (1968). That case simply holds that the " 'other insurance' " in the UM coverage is valid and is not "repugnant" to the Arkansas UM statute. (431 S.W.2d at 744) There is a later case which I prefer to follow: American Liberty Insurance Company v. Ranzau, 481 S.W.2d 793, 797 (Tex.1972), "precluding the use of 'other insurance' clauses" in such policies. While it is proper to say that four of our more eminent jurists seemed to agree with the Arkansas interpretation of the UM statute, I readily accept the views of Justice Steakley speaking for the majority in *Ranzau*. The A. L. R. citation does not speak to the problem under consideration.

The key to the determination made by the majority is: "Public policy dictates the allowance of partial rejection of such [UM] coverage in order to allow insured in that situation to secure insurance they can afford". This permits shopping for insurance "bargains," both as to rates and as to coverage. Both are presently prohibited by clear and unambiguous statutes. If "negotiated" premiums or less than full statutory coverage is to be permitted in this area of the insurance industry, it should be done by the Legislature and not the Courts. Kemp v. Fidelity & Casualty Co. of New York, supra (512 S.W.2d at 690).

It necessarily follows that I am likewise in disagreement with the concurring opinion which, by judicial fiat, makes an interim ad hoc legislative determination of what is good for the public at large in the field of UM coverage. This is a plain invasion of the powers entrusted to the Legislature and is not properly a judicial function. Justice Norvell, speaking for the Court in State v. Reyna, 160 Tex. 404, 333 S.W.2d 832, 838 (1960), used language which I find peculiarly appropriate here:

"Actual or supposed deficiencies in our school laws, election code, [I add, Insurance Code], or jurisdictional regulations governing appeals in civil cases will not justify a court's excursion beyond its

---

7. "In accordance with the provisions of Article 5.06—1 of the Texas Insurance Code, which permits the insured named in the policy to reject the Uninsured Motorists (Family Protection) Coverage, the undersigned insured does hereby reject such insurance, being the insurance provided for protection of persons insured under this policy who would legally be entitled to recover damages from the owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom."

8. Abbott v. Interinsurance Exchange of Auto. Club. of So. Cal., 260 Cal.App.2d 528, 67 Cal.Rptr. 220 (1968), involved the public liability coverage in the policy in question. The same issue confronted the court in Wildman v. Government Employees' Insurance Co., 48 Cal.2d 31, 307 P.2d 359 (1957). The third case, Interinsurance Exch. of Auto. Club v. Ohio Cas. Ins. Co., 58 Cal.2d 142, 23 Cal. Rptr. 592, 373 P.2d 640 (1962), involved two policies, one of garage liability, the other of public liability.

**748**

proper sphere in order to plug a hole or cure a supposed defect in the legislative scheme of things."

Tex. Const. art. II, § 1, Vernon's Ann. St., forbids this court exercising legislative power. While we are authorized to exercise a portion of the judicial power of the state, it is confined to an ascertainment and enforcement of the law adopted by the Legislative Branch. It is for the Legislature to prescribe what the law shall be in future cases arising under the statutes which it may enact. Not only is such a course required by the Constitution, "the legislative power is much more flexible and amenable to particular needs and detailed requirements than is the judicial process." Watkins v. Southcrest Baptist Church, 399 S.W.2d 530, 533 (Tex.1966). It is sufficient to call the matter to the attention of the Legislature, which meets within a few weeks; it is not proper to exercise a legislative function. See Kemp v. Fidelity & Casualty Co. of New York, supra.

Both parties moved for summary judgment—the defendant sought and received a summary judgment that plaintiff was not within the UM coverage of the policy, and plaintiff sought, but was denied, a partial summary judgment that he was so covered, with the amount of his recovery, if any, dependent upon a trial on the merits. Under these circumstances, I would reverse the judgment of the trial court and render judgment for plaintiff as prayed for below, i. e., that Form 119 attached to the policy before us was not a valid rejection of the UM coverage and that plaintiff is entitled to all of the benefits of the UM provision in such policy. State Farm Mut. Auto. Ins. Co. v. Pan American Ins. Co., 437 S.W.2d 542, 545 (Tex.1969); Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396, 400 (1958). But, since plaintiff sought only a partial summary judgment, the judgment of the trial court would be reversed and the cause remanded for trial on the merits consistent with the views herein expressed.